# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| BOYLSTON CP, LLC, JAMES HAYNES, AND SEWELL GRAVEL PIT, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 4-21-40132-MRG |
| TOWN OF BOYLSTON, BOARD OF SELECTMEN FOR THE TOWN OF BOYLSTON, DENNIS COSTELLO,  JAMIE UNDERWOOD, MATTHEW MECUM, AND SETH RIDINGER, | ) ) ) ) ) ) ) | |
| Defendant(s). | ) ) | |

_____

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**GUZMAN, J.**

This case concerns alleged violations of Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983 by various officials of the Town of Boylston. The Plaintiffs, Boylston CP, LLC ("Boylston CP"), Sewell Gravel Pit, LLC ("Sewell Gravel Pit"), and the two organizations' co-manager,[1] James Haynes ("Haynes") (collectively, "Plaintiffs") bring this action against the Town of Boylston, the Board of Selectmen for the Town of Boylston ("Board of Selectmen"), Dennis Costello ("Costello"), Jamie Underwood ("Underwood"), Matthew Mecum ("Mecum"), and Seth Ridinger ("Ridinger"). The present motion, brought by all Defendants, is a motion for partial summary judgment [ECF No. 36][2] as to all substantive due

---

[1] While Plaintiffs' complaint notes that Michael Kent is also a co-manager of both Boylston CP and Sewell Gravel Pit, Kent is not listed as a Plaintiff in this action.

[2] All pincites in this opinion refer to ECF pagination.

process claims made by Plaintiffs.[3] For the reasons stated below, the Court **GRANTS** Defendants' motion for partial summary judgment. Further, the Court declines to exercise supplemental jurisdiction over the remaining claim (Count II) and dismisses without prejudice the defamation claim.

## I.    BACKGROUND

Defendants filed a Statement of Material Facts ["SOF", ECF No. 38] pursuant to L.R. D. Mass. 56.1 that accompanied their motion for partial summary judgment. Also pursuant to L.R. 56.1, Plaintiffs filed an opposition in which they argued that one of the stated material facts was disputed. [ECF No. 44]. The Court will address whether a dispute exists, as well as the materiality of this fact, later in the opinion. For the purposes of the factual background, the Court will primarily rely on the undisputed material facts as presented in Defendants' Statement of Material Facts.[4]

### A.    Compass Pointe

In August 2015, Boylston CP purchased an 80-acre plot of land known as Compass Pointe with the intent of developing it. [SOF ¶ 2]. This plot was subject to "extensive litigation" between a prior owner and the Town of Boylston, which resulted in an Agreement for Judgment (the "Agreement"), that resolved the litigation. [Id. ¶ 3]. In accordance with the Agreement, the Town of Boylston approved a Definitive Subdivision Approval for Compass Pointe that contained approximately 30 Conditions of Approval that were "binding upon all successors in interest and assigns." [Id. ¶¶ 4-5].

---

[3] Plaintiffs also bring a claim for defamation against Costello under state law. [Compl. ¶¶ 102-04, ECF No. 1]. Defendants submit that the defamation claim "is not ripe for determination on summary judgment due to material factual disputes" and request that the Court remand Plaintiffs' defamation claim to state court. [Defs.' Mem. at 1-2, ECF No. 37].

[4] Fed. R. Civ. P. 56(c) allows the Court to consider both materials cited, and "other materials in the record." Therefore, when necessary, the Court will rely upon materials in the record to supplement the factual background.

In order to advance certain aspects of their project, Boylston CP required the approval of the Town of Boylston's Board of Health Agent, Defendant Dennis Costello. When Boylston CP submitted septic plans for Compass Pointe, Costello begged Plaintiffs to consider using the Fixed Activated Sludge Treatment ("FAST") septic system as opposed to a conventional system. [Id. ¶ 6; Compl. ¶ 47, ECF No. 1]. Plaintiffs agreed to use the FAST septic system, [SOF ¶ 6] and submitted proposed drawings that they allege were stamped and certified as complying with Massachusetts law. [Compl. ¶ 46]. Plaintiffs' permits were denied. Defendants allege that "Costello refused to issue six permits for four lots on the Compass Pointe development due to a '20-day time of travel rule.'"[5] [SOF ¶ 7]. Plaintiffs dispute that the reason Costello denied the six permits was because of the 20-day time of travel rule.[6] [See Pls.' Opp. at 2-4, ECF No. 43]. Instead, they argue that Defendants' statement of this fact implies "that Costello was acting in good faith" in denying the permits. [Id. at 3]. Plaintiffs allege that Costello has provided "shifting explanations as to the reason he withheld approval of the six permits." [Id. at 4]. One of the reasons Costello denied the permits, in Plaintiffs' view, was because of a bond that Haynes failed to post on the septic system.[7] [Id. at 3]. Plaintiffs also allege that Costello withheld the permits for other reasons, as evidenced by Costello's statements implying animosity towards Haynes regardless of whether the FAST septic systems were certified in compliance. [Id. at 4]. Costello

---

[5] The 20-day time of travel rule was a regulation enacted following the prior litigation of the Compass Pointe lot and the formation of the aforementioned Agreement, wherein septic permits for lots would not be approved if they were determined to be too close to the Town's wells. [Defs.' Mem. at 4]. Plaintiffs contend that the 20-day time of travel criteria was an "arbitrary regulation enforced by Costello and not a bona-fide regulation approved by the Massachusetts Department of Environmental Protection ("DEP"), the governing authority for septic system regulation in Massachusetts." [Compl. ¶ 51]. Defendants, however, stipulate that the 20-day time of travel rule was not recognized by the Massachusetts DEP. [SOF ¶ 8].

[6] Plaintiffs solely dispute ¶ 7 of Defendants' SOF. [ECF No. 44 ¶ 7]. All other stated facts are undisputed by Plaintiffs.

[7] Plaintiffs also contest the validity of Costello's deposition where he stated that the reason he denied the permits was because there was no bond placed on the system. [Pls.' Opp. at 3]. They highlight that Costello later says that he signed off on the permits after he was informed that Haynes ultimately placed a bond on the system. [Id.]. The reason, they contend, that this statement is false, is because "[i]n actuality, Haynes did not post any 'bond' . . . and Costello could not have legitimately withheld his approval for this reason." [Id.].

allegedly said to Haynes, "how many f—ing houses do you have to build before you are satisfied?" and "you're never going to get [the permits]." [Id.]. Lastly, Plaintiffs allege that when Haynes went to the Town Hall to pick up the permits, Costello told Haynes, "I'm probably breaking the law here if I don't sign them, but I'm not signing them." [Id.]. In April of 2019, the Town of Boylston ultimately issued the six permits to Haynes and Boylston CP. [SOF ¶ 9].

B.  Lilymere Estates

Boylston CP obtained title of land located at 299 Sewell Street that would eventually become known as the Lilymere Estates. [Id. ¶ 10; Defs.' Mem. at 5]. Around July of 2018, Haynes applied to the Town's Earth Removal Board (the "Board") for the removal of gravel from the land.[8] [SOF ¶ 10]. The Board voted to charge Plaintiffs a fee of $1.00 per cubic yard to remove the gravel at this site, despite previously charging another applicant seeking gravel removal $0.50 per cubic yard. [Id. ¶¶ 11-12].

In September of 2018, the Town's Planning Board issued a Decision regarding Plaintiffs' Lilymere Estates application for Site Plan Approval and Special Permits. [Id. ¶ 13]. The Lilymere Estates were subject to the Town of Boylston's affordable housing by-law, requiring housing developments of a certain size to contain a percentage of affordable units. [Id. ¶ 14; Defs.' Mem. at 6]. According to the by-law, these affordable units could not contain segregated housing. [Defs.' Mem. at 6]. Since Plaintiffs planned to build a Senior Residential Development, they were unable to comply with the by-law. [See Compl. ¶ 82]. In lieu of complying with the affordable housing by-law, Plaintiffs had discussions with representatives of the Town's

_____

[8] Plaintiffs applied to remove gravel from the land "in order to reduce its investment by proceeds from sale of the gravel and other materials" as well as to prepare the land for future development. [Compl. ¶ 71]. At issue separately, Plaintiffs seem to challenge the legality of this gravel removal fee. [Pls.' Opp. at 8 ("Haynes attended a meeting at the Earth Removal Board where several people . . . acknowledged that it is illegal under Massachusetts law to charge for the gravel.")]. The Court will address this argument in its discussion.

Planning Board, proposing that they would pay $150,000. [SOF ¶ 15]. The Board of Selectmen "seemed to be in favor" of this proposal. [Id.]. As a result, Plaintiffs made installment payments totaling to $100,000, which the Town accepted. [Id. ¶ 16].

When all but four units of the Lilymere Estates were sold, the Town of Boylston issued Plaintiffs a notice that they were not in compliance with the Town's affordable housing by-law and demanded $900,000 "in alternative compliance." [Id. ¶ 17]. The Town of Boylston would not issue the occupancy permits for the remaining four units until that amount was paid. [Id. ¶ 18]. As a result, Plaintiffs commenced a lawsuit against the Town of Boylston in state court, seeking a declaration that the affordable housing by-law was invalid.[9] [Id. ¶¶ 19-20]. Plaintiffs filed a motion for preliminary injunction and seek to enjoin enforcement of the by-law. [Id. ¶¶ 20-21]. The state court granted Plaintiffs' motion for a preliminary injunction. [Id. ¶ 23]; see Boylston CP, LLC, Docket No. 11 (Mass. Super. Ct. July 23, 2021).[10] Following the court's grant of a preliminary injunction, the Town of Boylston ultimately issued the remaining four occupancy permits. [SOF ¶ 24].

## II.    LEGAL STANDARDS

A motion for summary judgment under Fed. R. Civ. P. 56 will be granted "if the movant shows that there is no genuine dispute as to any material fact" such that the moving party is entitled to judgment as a matter of law. A movant must show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden shifts "to the nonmovant to establish the existence of at least one fact issue

---

[9] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) (collecting cases). As a result, the Court takes judicial notice of the pending state action, Boylston CP, LLC v. Town of Boylston Bd. of Selectmen, No. 2185 CV 539 (Mass. Super. Ct. 2021).
[10] All references to the Superior Court action use the state court's docket numbers.

which is both 'genuine' and 'material.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.

1990) (collecting cases). The nonmovant "must present affirmative evidence in order to defeat a

properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 257 (1986).

Issues are "genuine" when they require resolution from a finder of fact "because they

may reasonably be resolved in favor of either party." Id. at 250. In other words, there must be

"sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to

resolve the parties' differing version of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464

(1st Cir. 1975) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The "material" aspect of a summary judgment motion requires that a fact affect the outcome of

the case. Garside, 895 F.2d at 48 (quoting Anderson, 477 U.S. at 248). Material issues are ones

that "need to be resolved before the related legal issues can be decided." Mack v. Great Atl. &

Pac. Tea Co., Inc., 872 F.2d 179, 181 (1st Cir. 1989) (citing Greenberg v. P.R. Mar. Shipping

Auth., 835 F.2d 932, 934 (1st Cir. 1987)). In analyzing motions for summary judgment, all

reasonable inferences are drawn in favor of the nonmoving party. Gattineri v. Wynn MA, LLC,

63 F.4th 71, 85 (1st Cir. 2023) (quoting Doe v. Tr. of Bos. Coll., 892 F.3d 67, 79 (1st Cir.

2018)). Parties may not rely on "conclusory allegations or substantiated denials" and must take

facts "derived from the pleadings, depositions, answers to interrogatories, admissions and

affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United

States, 121 F.3d 1, 3 (1st Cir. 1997) (citing Fed. R. Civ. P. 56(c) & (e)).

"Local Rule 56.1 was adopted to expedite the process of determining which facts are

genuinely in dispute, so that the court may turn quickly to the usually more difficult task of

determining whether the disputed issues are material." Butters v. Wells Fargo Advisors, LLC,

No. 10-10072-MLW, 2012 WL 5959986, at *1 (D. Mass. Nov. 27, 2012) (quoting <u>Brown v.</u>
<u>Armstrong</u>, 957 F. Supp. 1293, 1297 (D. Mass.), <u>aff'd</u>, 129 F.3d 1252 (1st Cir. 1997)). The non-
moving party must state the specific facts that are disputed which prevent the granting of
summary judgment. <u>Brown</u>, 957 F. Supp. at 1297 (citing <u>Vasapolli v. Rostoff</u>, 864 F. Supp. 215,
218 (D. Mass. 1993), <u>aff'd</u>, 39 F.3d 27 (1st Cir. 1994)). The nonmovant must "go beyond merely
asserting the existence of a disputed and material fact[,]" and produce evidence that
"substantially proves the existence of such a disputed fact." <u>Lucia v. Prospect St. High Income</u>
<u>Portfolio, Inc.</u>, No. 90-10781-MA, 1993 WL 761409, at *5 (D. Mass. Aug. 26, 1993) (citing
<u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262 (1st Cir. 1991)).

In any event, if there is "sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party[,]" the Court will deny the motion. <u>Rochester Ford Sales, Inc. v.</u>
<u>Ford Motor Co.</u>, 287 F.3d 32, 38 (1st Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 249). Otherwise,
the motion should be granted.

## III.    <u>DISCUSSION</u>

Defendants seek summary judgment as to all of Plaintiffs' claims arising under 42 U.S.C.
§ 1983. Count I alleges a violation by Costello in his official capacity as the Town of Boylston
Board of Health Agent. Count III alleges a violation by the Town of Boylston for the manner in
which they charged the gravel removal fee. Count IV alleges a violation by the Town of
Boylston, the Board of Selectmen, and three individual selectmen (Underwood, Mecum, and
Ridinger) for attempting to coerce Plaintiffs into paying them $900,000 in lieu of compliance
with the affordable housing by-law. The Court will discuss the standard required to substantiate a
§ 1983 claim, and will then address each of the three counts separately.

A.    **§ 1983 Claims – Due Process**

Under 42 U.S.C. § 1983 ("§ 1983"), individuals "may sue certain persons for depriving them of federally assured rights, such as . . . the Fourteenth Amendment's right to procedural due process." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 n.2 (1st Cir. 2005)). There are two essential elements to claims brought under § 1983: (1) "the defendant must have acted under color of state law," and (2) "his or her conduct must have deprived the plaintiff of rights secured by the Constitution or federal law." Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). Plaintiffs in § 1983 suits must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

The Due Process Clause of the Fourteenth Amendment "has both 'substantive and procedural components.'" Kenyon v. Cedeno-Rivera, 47 F.4th 12, 23 (1st Cir. 2022) (quoting Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006)). Plaintiffs do not specify whether they are alleging procedural or substantive due process violations. In their complaint, they assert that the actions giving rise to each claim "shock the conscience" which would indicate that they at least seek claims under substantive due process. [Compl. ¶¶ 98-99, 107, 112]. In the abundance of caution, however, the Court will analyze for both procedural and substantive due process violations.

1. *Procedural Due Process*

Procedural due process requires that fair procedures be put in place that allow an individual to reasonably meet the requirements of the procedure. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991); see Depoutot v. Raffaelly, 424 F.3d

112, 118 (1st Cir. 2005) ("In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures." (citation omitted)). An affected individual "must be forewarned and awarded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

Plaintiffs do not specify what procedures they were deprived of in relation to any of the three claims under § 1983, nor do they describe any procedures that should have been followed that were not. Therefore, any procedural due process claim would not likely survive the summary judgment stage because they have not been substantiated in any capacity. See Kenyon, 47 F.4th at 24 n.10 (finding that plaintiff likely waived any potential procedural due process claim because of a lack of development in not specifying what procedures were lacking); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("A litigant has an obligation to spell out its arguments squarely and distinctly, or forever hold its peace." (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)) (internal citation omitted)).

In fact, Plaintiffs describe the ways in which the process of seeking approval for their various projects was outlined and the various meetings they attended to further their projects. [See, e.g., Compl. ¶¶ 38, 45-46, 52-53]; see Chiplin Enters., Inc. v. City of Lebanon, 712 F.2d 1524, 1528 n.6 (1st Cir. 1983) (finding that plaintiff who was denied building permits would not be able to state a procedural due process claim due to the holding of many administrative hearings, meetings with local officials, and consideration of the state court system). Plaintiffs, rather, seem to allege that the procedures and policies in place were abused by multiple actors in ways that "shock the conscience." Therefore, the Court declines to find any claims of action arising under violations of procedural due process.

Instead, the Court will analyze each of the three claims to determine if Plaintiffs' substantive due process rights were violated.

### 2.   *Substantive Due Process*

Substantive due process guarantees protects "individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." Pagán, 448 F.3d at 32 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). Claims arising under substantive due process "are limited to government action that, by its very nature, 'shock[s] the conscience,'" Freeman v. Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013) (quoting Pagán, 448 F.3d at 32), and is typically "reserved for 'truly horrendous situations.'" Id. (quoting Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)). There is no definitive test or formula for determining if conduct shocks the conscience, but the conduct "must at the very least be 'extreme and outrageous,'" Pagán, 448 F.3d at 32 (quoting Depoutot, 424 F.3d at 119), or at least "truly outrageous, uncivilized, and intolerable[.]" Id. (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)). Additionally, "[m]ere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." Depoutot, 424 F.3d at 119 (emphasis added) (citing Amsden, 904 F.2d at 757). Indeed, the First Circuit has set the bar to find a violation of substantive due process very high.

In the land use context, the First Circuit has held that the substantive due process doctrine typically may not "be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong." Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007) (quoting Pagán, 448 F.3d at 33). Additionally, even in circumstances where "state officials have allegedly violated state law or administrative

procedures," the conduct still does "not ordinarily rise to the level of a constitutional violation." Lippman v. Town of Grafton By & Through Berger, 594 F. Supp. 3d 134, 149 (D. Mass. 2022) (quoting PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) overruled in part on other grounds by San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465 (1st Cir. 2012)). It is typically not enough "to show that a regulatory board 'exceeded, abused or "distorted" its legal authority.'" Baker v. Coxe, 940 F. Supp. 409, 415 (D. Mass. 1996) (quoting Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.), cert. denied, 459 U.S. 989 (1982)). Such claims tend to be characterized as "run of the mill dispute[s] between a developer and a town planning agency." Creative Env'ts, 680 F.2d at 833.

For the purposes of each substantive due process claim under § 1983, the Court determines that the first requirement, that the conduct was carried out under color of state law, has been met in all three instances. See Gagliardi, 513 F.3d at 306. Costello was the Town of Boylston's Board of Health Agent and likely acted on behalf of the local government in initially rejecting Plaintiffs' septic permits. Additionally, the Town of Boylston's Earth Removal Board acted under color of state law to charge a gravel removal fee to Plaintiffs. Lastly, the Board of Selectmen acted under color of state law when ordering Plaintiffs to pay $900,000 in alternative compliance with the Town's affordable housing by-law. As such, the first prong of the § 1983 analysis has been met in each instance. The Court will now analyze each claim to determine if any of those actors "deprived the plaintiff of rights secured by the Constitution or federal law." Id.

### a. Count I - Costello

Plaintiffs characterize the actions of Costello as a "rogue bureaucrat intentionally delaying building projects." [Pls.' Opp. at 2]. They contend that Costello's "shifting

explanations" as to why he initially denied their septic permits[11] are evidence of bad faith that shock the conscience. [Id. at 3-4]. The Court notes that while there was an apparent two-year delay in the issuance of the septic permits, the permits were ultimately issued in April 2019. [See SOF ¶¶ 7, 9].

The First Circuit has dealt with a case very similar to this in Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134 (1st Cir. 2016). In that case, plaintiffs sought to develop land, and the defendant who oversaw ensuring and maintaining safe drinking water in the town sought to prevent the development. Id. at 137-38. After plaintiffs left a meeting to discuss their building proposal, the defendants said that they wanted the project "to go away" and expressed their desire to make the plaintiffs "jump every hurdle." Id. at 138. The town denied the project, but after plaintiffs appealed to the Massachusetts Land Court, they were ultimately approved for a slightly smaller project of the same nature. Id. at 139. Despite the approval of the project, the defendant continued to petition to rescind or modify the approved plan, and plaintiffs alleged that an individual defendant "embarked on a campaign of defamation, spreading the same supposed falsehoods" that were raised in the initial approval meetings. Id. The plaintiffs brought an action under § 1983 alleging, inter alia, a violation of substantive due process rights. Id. The First Circuit ultimately concluded that plaintiffs "did not lose out on any land and were not precluded from developing . . . [with both projects moving] forward as planned, albeit with some requirements that plaintiffs [were] not happy with." Id. at 145. While plaintiffs in Najas Realty "plausibly alleged that [defendants] were doggedly persistent" in their beliefs that the project would have environmental effects, the First Circuit found that this conduct was "hardly the

---

[11] Examples including the 20-day time of travel rule, his alleged animosity toward Haynes, his alleged lack of care for breaking the law to prevent the Plaintiffs from advancing their project, etc.

'brutal, demeaning, and harmful' stuff that makes a substantive due process claim." Id. (quoting Elena v. Mun. of San Juan, 677 F.3d 1, 7 (1st Cir. 2012)).

In this case, Plaintiffs allege that Costello "undertook to delay the work of Boylston CP as much as possible[.]" [Compl. ¶ 34]. While it ultimately took two years to issue the permits, the delay was not necessarily without reason. Like the defendants in Najas Realty, Costello allegedly had beliefs that the project would have effects on public health, mainly that the drinking water would be affected because the lots were within a 20-day time of travel to the Town's drinking water. The plaintiffs in Najas Realty alleged that the unease expressed by defendants was unfounded. 821 F.3d at 138. As mentioned, supra, Plaintiffs dispute that this was the reason Costello denied the permits. Assuming the Court takes Plaintiffs' view that Costello had shifting explanations as to why he denied the permits, the Court is nonetheless unconvinced that any of the possible explanations Plaintiffs offered raise to the level of shocking the conscience.

Regardless of Plaintiffs' characterization of Costello's alleged mental state towards them, the claim is "too typical of the run of the mill dispute between a developer and a town planning agency," and thus does not rise to the level of a due process violation. Creative Env'ts, 680 F.2d at 833. While they allege that Costello held animosity toward Haynes, Plaintiffs have not posited that Costello denied the permits out of racial animus, political discrimination, or anything of that matter, which might tend to raise this above the level of a run of the mill dispute. See PFZ Props., 928 F.2d at 30. Therefore, the Court finds that this case aligns more closely with the facts of Najas Realty, where the Court found that plaintiff did not have a cognizable § 1983 claim.

Thus, the Court **GRANTS** summary judgment as to Count I.

### b.  Count III – Gravel Removal Fee

In Count III, Plaintiffs allege that the fee they were charged for gravel removal by the Town of Boylston's Earth Removal Board was horrendous and unconscionable. [Pls.' Opp. at 8]. After a vote, the Earth Removal Board charged Plaintiffs a fee of $1.00 per cubic yard, whereas a prior selectman from the Town was only charged $0.50 per cubic yard for gravel removal. [Id.]. While they primarily argue that the alleged discriminatory charging scheme shocks the conscience, they also seem to argue that the gravel removal fee itself is illegal. [Id.].

The Court will first analyze Plaintiff's argument that the gravel removal fee in general is illegal. Plaintiffs point to one case that they claim "establishes that it is illegal for a municipality to charge for certain resources unless the money is needed to compensate the governmental entity for specific expenses."[12] [Id. n.5]; see Emerson Coll. v. City of Boston, 462 N.E.2d 1098 (Mass. 1984). The Court does not interpret Emerson Coll. in the same light. In that case, the Massachusetts Supreme Judicial Court outlined the difference between taxes and fees that are charged by the government. Emerson Coll., 462 N.E.2d at 1104-05. In reviewing a statute of this nature, the Court gives deference to the "classification of the charge as a fee." Id. Fees share common traits distinguishing them from taxes, in that they are "charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society[.]'" Id. at 1105 (quoting Nat'l Cable Television Ass'n v. United States, 415 U.S. 336, 341 (1974)). The fees, which are unlike taxes, "are paid by choice, in that

---

[12] The Court acknowledges that Plaintiffs initially plead in their complaint that "[a]ccording to Massachusetts law, such fees are permissible to reimburse the towns for any direct costs they might incur as a result of the removal of material, such as, sweeping the adjacent road, dust control, policing traffic, etc." [Compl. ¶ 76 (emphasis added)]. In support of this paragraph of their complaint, they mysteriously cite a case they later say supports their claim that these types of charges are illegal. [See Pls.' Opp. at 8]; Emerson Coll. v. City of Boston, 462 N.E.2d 1098 (Mass. 1984). The Court will conclude this discrepancy in their favor and assume their more recent filing [Pls.' Opp at 8], is the position they intended. See Gattineri, 63 F.4th at 85 (holding that at summary judgment stage, all reasonable inferences are drawn in favor of nonmoving party).

the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge . . . [with] the charges [being] collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." Id. (citing Vanceburg v. Fed. Energy Regul. Comm'n, 571 F.2d 630, 644 n.48 (D.C.Cir. 1977), cert. denied, 439 U.S. 818 (1978)).

Plaintiffs state in their complaint that they sought to "mine and remove gravel from land . . . in order to reduce its investment by proceeds from sale of the gravel and other materials, and to, at the same time, prepare the remaining land for development as housing." [Compl. ¶ 71 (emphasis added)]. They further state that the removal fee would "reimburse the town for any direct costs they might incur as a result of the removal of material, such as, sweeping the adjacent road, dust control, policing traffic, etc." [Id. ¶ 76]. It is clear that the cost associated with gravel removal falls under the type of "fee" the Supreme Judicial Court had in mind when differentiating between fees and taxes. The benefit of selling the gravel is not one that is "shared by other members of society," nor do Plaintiffs allege that the money collected for the service was used to raise governmental revenue. See Nat'l Cable, 415 U.S. at 341; Emerson Coll., 462 N.E.2d at 1105. Moreover, even assuming arguendo that the cost of gravel removal is characterized as a tax, making it an "enforced contribution to provide for the support of the government[,]" Emerson Coll., 462 N.E.2d at 1106 (quoting United States v. Tax Comm'n of Miss., 421 U.S. 599, 606 (1975)), the Court is not persuaded that the alleged conduct would shock the conscience. As previously mentioned, it is not enough "to show that a regulatory board 'exceeded, abused or "distorted" its legal authority.'" Baker, 940 F. Supp. at 415 (quoting Creative Env'ts, 680 F.2d at 833). The Court is not swayed that even if the cost of gravel

removal were an unlawful tax that it would rise to a level warranting a substantive due process violation.

Next, the Court will analyze the allegedly discriminatory fee charged to them. Plaintiffs allege that a prior selectman from the Town was only charged $0.50 per cubic yard for gravel removal when Plaintiffs were charged $1.00 per cubic yard. [Pls.' Opp. at 8]. This difference in charge, they argue, is "horrendous and unconscionable." [Id.]. In fact, Plaintiffs argue that the tactics "are something akin to the behavior of organized crime[.]" [Id.]. The Court is not inclined to agree.

The First Circuit has faced facts similar to these that provide a helpful analysis to the Court. In Raskiewicz v. Town of New Boston, a plaintiff sought to excavate and sell gravel and sand from property that he intended to develop afterward. 754 F.2d 38, 39 (1st Cir. 1985). In order to remove the resources, plaintiff had to apply for a permit, which was repeatedly denied by the town. Id. at 39-41. After changing the terms of his permit application many times to satisfy the demands of the town selectmen, plaintiff "reasonably concluded that nothing would cause [them] . . . to issue him the said permit." Id. at 41. The plaintiff ultimately decided to sell the property. Id. The new owners sought to adopt the plaintiff's application for gravel removal, as they were "satisfied to work under the same regulations[,]" thus saving time. Id. at 42. The selectmen granted the application, which contained "substantially the same terms and conditions imposed in the [plaintiff's] permit." Id. at 42-43. The plaintiff brought a § 1983 action alleging a deprivation of his Fourteenth Amendment due process rights. Id. at 43. The First Circuit found that the state "offer[ed] a panoply of administrative and judicial remedies, [which means] litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of [§ 1983]." Id. at 44. In affirming the district court's disposal of the case on summary

judgment, the court noted that <u>all</u> cases involving an appeal from a disappointed developer are likely to allege that a planning board exceeded, abused, or distorted its legal authority for "some allegedly perverse (from the developer's point of view) reason." <u>Id.</u> at 44 n.4 (quoting <u>Creative Env'ts</u>, 680 F.2d at 833). That the plaintiff in <u>Raskiewicz</u> felt that the board denied their application for reasons of bias was not enough to make out a due process claim under § 1983. <u>Id.</u> at 44-45. Even further, a comment from one of the selectmen that plaintiff "would never be given a gravel permit[,]" combined with the fact that the board later approved substantially the same permit to the land's successor <u>still</u> did not amount to an indication of illegal bias warranting a § 1983 claim. <u>Id.</u> at 45.

The Court finds <u>Raskiewicz</u> to be persuasive here. Plaintiffs do not contend that they were denied the ability to remove the gravel, they merely contend that the gravel removal fee was less than what was charged in one other instance. They do not point to a pattern indicating that the Town of Boylston <u>always</u> charged $0.50 per cubic yard for gravel removal and instead charged Plaintiffs more out of spite or bias. The fact that they were charged $0.50 more per cubic yard is of no consequence to this Court. The circumstances of this conduct do not rise to the level of shocking the conscience to make out a substantive due process violation.

Therefore, the Court will **<u>GRANT</u>** summary judgment as to Count III because Plaintiffs have not demonstrated that they were deprived "of rights secured by the Constitution or federal law." <u>Gagliardi</u>, 513 F.3d at 306.

### c. Count IV – Affordable Housing By-Law

Plaintiffs allege that the Board of Selectmen for the Town of Boylston through its actors (Underwood, Mecum, and Ridinger) acted under color of state law by "attempting to coerce the Plaintiffs into paying them an unlawful charge of $900,000" in lieu of compliance with the

affordable housing by-law. [Compl. ¶ 111]. The Court is not convinced that the conduct shocks the conscience.

The First Circuit has repeatedly emphasized that "even the outright violation of state law by local officials" does not implicate the Constitution without the presence of "fundamental procedural irregularit[ies], racial animus, or the like." Roy v. City of Augusta, 712 F.2d 1517, 1523 (1st Cir. 1983) (quoting Creative Env'ts, 680 F.2d at 833); see, e.g., Chiplin Enters., 712 F.2d at 1528; PFZ Props., 928 F.2d at 32; Amsden, 904 F.2d at 757 ("Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process." (citations omitted)).

In a case that largely resembles the facts of the instant case, Chiplin Enters., plaintiff sought building permits that took over five years to obtain even after preliminary approval was granted. 712 F.2d at 1525-26. Over the course of those five years, the city determined that their application violated a zoning ordinance and rejected their proposal even after plaintiff submitted a modified proposal. Id. at 1525. The plaintiff sought review in state court, which ultimately resulted in the state supreme court finding that the zoning regulation "exceeded the scope of the state enabling legislation on which it was based." Id. at 1526. Ultimately, the permits were issued, albeit after five years. In finding that the plaintiff did not state a claim under § 1983, the First Circuit found that the city's "bad faith refusal to follow state law in such local administrative matters" did not amount to a deprivation of substantive due process. Id. at 1528.

In the instant case, Plaintiffs sought approval for their Lilymere Estates project despite the plans allegedly being in violation of the town's affordable housing by-law. Subsequently, "Plaintiffs had discussions with representatives of the Town's Planning Board wherein it was proposed that they would pay $150,000 in lieu of compliance with the by-law and the Board of

Selectman <u>seemed to be in favor of that proposal</u>. [SOF ¶ 15 (emphasis added) (internal quotation marks omitted)]. After Plaintiffs began to make installment payments in an amount totaling $100,000, and after all but four units were sold, the Town demanded $900,000 in alternative compliance with the by-law. [<u>Id.</u> ¶¶ 16-17]. Like the plaintiff in <u>Chiplin Enters.</u>, Plaintiffs commenced a lawsuit in state court to declare the affordable housing by-law invalid. [<u>Id.</u> ¶¶ 19-20]. The state court then issued a preliminary injunction preventing the by-law from being enforced, resulting in the Town issuing the permits Plaintiffs sought. [<u>Id.</u> ¶¶ 23-24].

The Plaintiffs point to the words of the Worcester Superior Court in the preliminary injunction order that they argue supports a finding that their substantive due process rights must have been violated. In the order, the court stated that the conduct by the Defendants "borders on bad faith." <u>Boylston CP, LLC</u>, Docket No. 11 at 3. Plaintiffs then make a leap to say that "what the Superior Court Justice described as 'bad faith' can also be described as a form of extortion." [Pls.' Opp. at 7]. The Worcester Superior Court's opinion that the conduct <u>borders</u> on bad faith does not propel the conduct into grounds of bad faith, nor does it automatically raise the conduct to a level that shocks the conscience. The validity of the affordable housing by-law is still pending in Worcester Superior Court, the merits of which were left undecided in the preliminary injunction order. [Defs.' Mem. At 7]. Even assuming arguendo that the Worcester Superior Court determines the affordable housing by-law to be invalid, "not every violation of a state statute amounts to an infringement of constitutional rights." <u>Chiplin Enters.</u>, 712 F.2d at 1527 (collecting cases). This is further supported by the fact that Plaintiffs were granted the permits following the court's granting of the preliminary injunction. Had the Town of Boylston continued to refuse to issue the permits in light of the granting of the preliminary injunction, this Court may have the ability to correct the wrong in those special circumstances. <u>See Roy</u>, 712

F.2d at 1523 (finding that plaintiff had stated a claim because the defendants continued to refuse the issuance of a license even after the state supreme court had commanded defendants to do so, resulting in the state court being unavailable to correct the wrong). At this stage, Plaintiffs have prevailed in seeking a preliminary injunction by means of the state court, and as a result, have been given their permits. See Chiplin Enters., 712 F.2d at 1528 (affirming dismissal of case where plaintiff prevailed in invalidating a zoning ordinance in state court, was issued its permit as a result, and proceeded to build its building). Therefore, they do not meet the high standard of demonstrating that Defendants' conduct shocks the conscience.

As a result, the Court **GRANTS** summary judgment as to Count IV.

### B.    Qualified Immunity

Since the Court finds that all of Plaintiffs' § 1983 claims fail to survive summary judgment, it need not address whether the Defendants are entitled to qualified immunity.

### C.    Supplemental Jurisdiction - Defamation

Having determined that Counts I, III and IV (the § 1983 claims) fail, and "given that the Plaintiff's basis for this Court's subject matter jurisdiction was the purported presence of a federal question[,]" the Court will not exercise supplemental jurisdiction over the only remaining defamation claim. Ryan v. UMass Mem'l Health, 728 F. Supp. 3d 215, 221 (D. Mass. 2024) (collecting cases). As the Supreme Court has stated:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citations omitted).

Therefore, the Court will **DISMISS** Count II without prejudice.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial summary

judgment [ECF No. 36] as to Counts I, III, and IV and dismisses Count II without prejudice.

**SO ORDERED.**

Dated: January 10, 2025

_/s/ Margaret R. Guzman_
Margaret R. Guzman
United States District Judge

21